# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4385 | **DATE** | 3/15/2004 |
| **CASE TITLE** | AGRA MARKE, INC. vs. AVENTIS CROPSCIENCE USA LP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendants' motion for summary judgment is granted in part and denied in part, and plaintiff's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 1 6 2004 date docketed | 23 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | GMA docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE STARLINK CORN PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 1403 |
| This document is applicable to: | ) ) | |
| AGRA MARKE, INC., Plaintiff, | ) ) ) ) | |
| vs. | ) ) | No. 03 C 4385 |
| AVENTIS CROPSCIENCE USA LP, and STARLINK Logistics, Inc., Defendants. | ) ) ) ) | |

DOCKETED
MAR 1 6 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff AgraMarke, Inc. brought this action against defendants Aventis CropScience USA LP (Aventis) and StarLink Logistics Inc. (SLLI) alleging breach of contract and, alternatively, promissory estoppel or equitable estoppel. Defendants filed a motion seeking summary judgment as to all counts and plaintiff responded by filing a cross-motion for summary judgment. For the following reasons, defendants' motion is granted in part and denied in part, and plaintiff's motion is denied.

## BACKGROUND

StarLink™ corn is corn that has been genetically modified to produce the protein Cry9C, which protects it from the European corn borer and other insects. Cry9C is registered by the Environmental Protection Agency pursuant to the Federal Insecticide and Rodenticide Act (FIFRA). Cry9C's FIFRA registration permits StarLink corn to be used for animal feed or industrial uses, but not for human food.

On September 18, 2000, the media reported that Cry9C DNA had been detected in taco

23

shells produced for human consumption. Other detections of Cry9C in food followed. Aventis subsequently developed the StarLink Enhanced Stewardship Program to direct StarLink corn to proper destinations. It also developed the Elevator Program, designed to resolve claims filed by elevators on an individual basis, with the goal of minimizing the financial harm to elevators resulting from inadvertent contact with StarLink corn. On January 22, 2001, Aventis entered into an agreement with the attorneys general of 17 states, incorporating the Enhanced Stewardship Program and the Elevator Program. Aventis made the terms and conditions of this agreement available to the public on its web site. In June 2002, SLLI assumed the management of the programs and is currently responsible for the payment of claims.

AgraMarke is an agricultural cooperative that markets "Identity Preserved"(IP) grains produced by its members. AgraMarke has in place a number of requirements that must be met by all suppliers from which it buys and sells, including the requirement that members supply only corn which has not been genetically modified. In 1999 and again in 2000, AgraMarke entered into purchase agreements with ConAgra Corn Processing to provide IP corn to ConAgra. ConAgra then sold corn products to Meiji Seika Kaisha, a Japanese company. In March 2001, Meiji Seika Kaisha rejected a shipment after discovering the presence of Cry9C in some corn. In November 2001, AgraMarke submitted a claim to SLLI in the amount of $946,918.45, the alleged loss caused by the rejection of the corn products containing Cry9C.

## DISCUSSION

Our function in ruling on a motion for summary judgment is merely to determine if there is a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Only if the evidence on file shows that no such issue exists and that the

moving party is entitled to judgment as a matter of law will we grant the motion. Celotex Corp. v Catrett, 477 U.S. 317, 322-23 (1986); Bennett v. Roberts, 295 F.3d 687, 694 (7th Cir. 2002).

We begin by discussing the choice of law. Because this case was transferred here from Minnesota pursuant to multi-district litigation, we use Minnesota's choice of law rules. *See* Van Dusen v. Barrack, 376 U.S. 612, 639 (1964). Those rules require us to look at five factors when deciding which law to apply: (1) the predictability of results; (2) the maintenance of interstate order; (3) simplification of the judicial task; (4) advancement of the forum state's interest; and (5) the better rule of law. Jepson v. Gen Cas. Co. of Wisconsin, 513 N.W.2d 467, 470 (Minn. 1994). There are three potential choices: Minnesota – the forum state, North Carolina – where Aventis and SLLI are based and where the claims office for elevators and grain handlers is located, and Kansas – where AgraMarke is organized. Other than being the original forum, Minnesota has no material interest in this action and the parties had no reason to believe that Minnesota law would govern a dispute. While North Carolina and Kansas both have significant ties to the parties, Kansas law is the better choice because the Kansas attorney general (unlike the North Carolina attorney general) was a party to the agreement signed by Aventis/SLLI. Kansas therefore has a strong governmental interest in the resolution of claims related to StarLink corn and the parties should have anticipated that any dispute would implicate Kansas law.[1]

Plaintiff alleges three potential grounds for recovery based on defendants' failure to cover the claim: breach of contract, promissory estoppel, and equitable estoppel. We first turn

---

[1] We note that, while there are significant differences in the law of the various states in this area, we do not believe that these differences would be outcome-determinative.

to the claims for estoppel. In order to show promissory estoppel, plaintiff must prove that defendants made a promise of some future behavior, intending for plaintiff to rely on it, and that plaintiff did so to its detriment. Berryman v. Kmoch, 559 P. 2d 790, 794 (Kan. 1977). Equitable estoppel occurs when, instead of a promise of future activity, defendants make a false statement of material fact that plaintiff relies on. Gillespie v. Seymour, 823 P. 2d 782, 788-89 (Kan. 1991).

Plaintiff can show no such reliance on any promise or representation by defendants. Defendants did not institute the programs or sign the agreement until 2001, after the discovery of Cry9C in food products. AgraMarke has been selling IP grain to ConAgra since 1999. It would therefore have been impossible to rely on statements made by Aventis/SLLI in deciding to sell the IP corn. The only action by plaintiff after the public notice of the claims procedure was to actually file the claim. Plaintiff cannot demonstrate how this act constituted detrimental reliance when the only alleged loss occurred when the corn was rejected.

Likewise, plaintiff fails to demonstrate the existence of a valid agreement with Aventis/SLLI. The public notice of intent to cover validly submitted claims was nothing more than an invitation to contract. Such an invitation is not binding on the parties unless it contains all material terms and conditions, which are clearly lacking here. Weil and Associates v. Urban Renewal Agency of Wichita, 479 P. 2d 875, 883 (Kan. 1971). There is no indication that defendants ever agreed to cover plaintiff for any loss. The only existing contractual agreement is that between Aventis/SLLI and the state governments.

Plaintiff may, however, be able to recover pursuant to this agreement. A third party beneficiary to a contract may enforce the contract if the actual parties to the agreement intended that the third party directly benefit. Fasse v. Lower Heating and Air Conditioning,

Inc., 736 P. 2d 930, 932 (Kan. 1997). It is not necessary that the contracting parties intended for the third party to be the sole beneficiary. *Id.* While the contract states that the parties involved were Aventis and the state attorneys general creating obligations enforceable by the states, it also indicates that the purpose of the contract was to mitigate potential losses suffered by grain handlers and elevators. Thus, it is certainly possible that plaintiff is entitled to enforce the agreement as a third party beneficiary.

Defendants deny that the agreement with the attorneys general created binding contracts with the third parties. Plaintiff, on the other hand, argues that defendants have essentially no discretion in deciding whether to cover losses suffered by grain handlers. The truth is somewhere in between. By executing the agreement, defendants made a binding promise to cover losses caused by the corn, which may be enforced by the attorneys general, but it appears that the objections can also be enforced by third parties who are improperly refused payment. In doing so, they did not waive their right to review the claim submissions to ensure their validity. Defendants contend that any losses in this case were caused solely by plaintiff's own failure to test the corn and that losses of this nature are not covered by the agreement. Questions of fact remain as to whether this contention is correct or whether plaintiffs should be reimbursed. Summary judgment is therefore improper.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in part and denied in part; plaintiff's motion for summary judgment is denied.

JAMES B. MORAN
Senior Judge, U. S. District Court

March 15, 2004.